UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY WOODS,

                                          Plaintiff,

                                                                                       Case # 15-CV-463-FPG

v.

                                                                                      DECISION & ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                                          Defendant.
_____

## INTRODUCTION

Plaintiff Timothy Woods ("Plaintiff") brings this action to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). ECF No. 1. The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 7, 8. On October 25, 2016, the Court heard oral argument from both parties regarding their respective motions. For the reasons stated below, Plaintiff's motion (ECF No. 7) is GRANTED, the Commissioner's motion (ECF No. 8) is DENIED, and this matter is REMANDED for further administrative proceedings.

## BACKGROUND

On July 24, 2012, Plaintiff protectively filed an application for DIB under the Act. Tr.[1] 16. In that application, he alleged that he has been disabled since February 1, 2012 due to atrial fibrillation, anxiety disorder, and high blood pressure. Tr. 152. After Plaintiff's application was

---

[1]     References to "Tr." are to the administrative record in this matter.

denied at the initial level, a hearing was held before Administrative Law Judge Brian Kane ("the ALJ") on November 14, 2013. Tr. 30-75. Peter A. Manzi, a vocational expert ("the VE"), also testified. *Id.* On December 23, 2013, after considering Plaintiff's application *de novo*, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Act. Tr. 16-25. That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 12, 2015. Tr. 1-4. Plaintiff then filed this civil action. ECF No. 1.

## LEGAL STANDARDS

**I.     Disability Determination**

The Act defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). Social Security Administration ("SSA") regulations outline the five-step process used to determine whether a claimant is "disabled" under the Act. 20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaged in any substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If the claimant does, the analysis proceeds to step three.

At step three, the ALJ must determine whether the claimant has an impairment (or combination of impairments) that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings"). If the impairment

2

does meet or equal a condition in the Listings and the durational requirement (20 C.F.R. § 404.1509) is satisfied, then the claimant is disabled. 20 C.F.R. § 404.1520(d). If it does not, the ALJ will make a finding regarding the claimant's residual functional capacity ("RFC"), which is an assessment of what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is then used at steps four and five. 20 C.F.R. § 404.1520(e).

The fourth inquiry is whether, given the claimant's RFC, the claimant can still perform his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform his or her past relevant work, the claimant is not disabled. *Id.* If he or she cannot, the ALJ proceeds to step five.

At the fifth and final step, the ALJ must consider the claimant's RFC as well as his or her age, education, and work experience to determine whether the claimant can make an adjustment to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. § 404.1520(g). If the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the claimant cannot make that adjustment, then the claimant is disabled. *Id.*

The burden of proving the first four elements is on the claimant, and the burden of proving the fifth element is on the Commissioner. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## II.     District Court Review

District Court review of the Commissioner's decision is not *de novo*. *See, e.g.*, *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 416 (W.D.N.Y. 2006) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The Commissioner's decision may only be set aside if it is not supported by "substantial evidence" or is the product of legal error. *See, e.g.*, *Miller v. Colvin*, 85 F. Supp. 3d 742, 749 (W.D.N.Y. 2015); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence means "more

than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

## DISCUSSION

**I.      The ALJ's Decision**

In this case, the ALJ analyzed Plaintiff's claim for benefits under the process described above. Notably, before engaging in the five-step analysis, the ALJ first found that Plaintiff is insured through December 31, 2016 for the purpose of being eligible to receive DIB. Tr. 18.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: "episodes of atrial fibrillation and anxiety." Tr. 18. At step three, the ALJ found that Plaintiff does not have any impairment or combination of impairments that meets or medically equals a Listings impairment. Tr. 18-20.

The ALJ then found that Plaintiff has the RFC to perform sedentary work "except that the claimant is limited to semi-skilled work; must avoid hazards such as machinery and heights; and would be off task for five to ten percent of an eight hour workday." Tr. 20.

At step four, the ALJ found that Plaintiff's RFC renders him unable to perform his past relevant work as a Supervisor - Operations.[2] Tr. 24.

Next, the ALJ found that Plaintiff was classified as a "younger individual" under the SSA's regulations because he was born on May 22, 1964 and was 47 years old at the time of his alleged disability onset date. Tr. 24; *see* 20 C.F.R. § 404.1563.

---

[2] Specifically, Plaintiff testified at his hearing that while in the military, he worked at a power plant as an operator and then a supervisor. Tr. 67-69.

Before moving on to step five, the ALJ also found that Plaintiff had acquired the following skills from his past relevant work as a Supervisor-Operations: "data skills and supervisory skills." Tr. 24.

Then, at step five, the ALJ—relying on testimony from the VE—found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs in the national economy that require skills acquired from Plaintiff's past relevant work but no additional skills. Tr. 25. Specifically, the VE testified (and the ALJ found) that Plaintiff could work as a Calculating Machine Operator, Sorter, or Laundry Pricing Clerk. *Id.* Accordingly, the ALJ found that Plaintiff is not disabled under the Act. Tr. 32-33.

## II.   Plaintiff's Challenge to the ALJ's Decision

Plaintiff argues that remand is warranted because the ALJ erred at step five of the analysis. Specifically, Plaintiff advances a two-part argument: (1) the ALJ erred by failing to consider whether Plaintiff should be considered a "person closely approaching advanced age" rather than a "younger person," and (2) this error was not harmless because the ALJ also erred in determining that Plaintiff had transferable skills. The Court agrees that the ALJ erred at step five and that remand is warranted.

### 1.   Age Categories

The SSA's regulations set forth the following age categories: "younger person" (under age 50), "person closely approaching advanced age" (50-54), and "person of advanced age" (55 or older). 20 C.F.R § 404.1563. These age categories are then used in the Medical-Vocational Guidelines (the "Grids") to make determinations at step five of the analysis. The regulations further state:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category*

> *would result in a determination or decision that you are disabled*, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b) (emphasis added).  If a claimant's age is "borderline" and the ALJ fails to consider whether the higher age category should be used, remand is warranted so long as using a higher age category would entitle the claimant to benefits.

### A. Plaintiff Should Have Been Considered A "Person Closely Approaching Advanced Age"

To determine whether the ALJ erred when he classified Plaintiff as a "younger person," the Court must first answer a threshold question: what date should be used to calculate Plaintiff's age?

Plaintiff applied for DIB under Title II of the Act and did not apply for supplemental security income ("SSI") under Title XVI.  Tr. 131.  Under Title II, a period of disability cannot begin after a worker's disability insured status has expired.  SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983).  Therefore, "[w]hen the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured.  In these situations, the person's age at the time of decisionmaking is immaterial." *Id.*

Two recent Western District of New York decisions, *Torres v. Comm'r of Soc. Sec.*, No. 14-CV-6438P, 2015 WL 5444888, at *10 n.4 (W.D.N.Y. Sept. 15, 2015) and *Koszuta v. Colvin*, No. 14-CV-694-JTC, 2016 WL 824445, at *2 (W.D.N.Y. Mar. 3, 2016), have specifically discussed what date should be used in DIB cases to determine a claimant's age.  In both *Torres* and *Koszuta*, the courts explained that an individual's date last insured ("DLI") is the relevant date for DIB cases, while the date of the ALJ's decision is the relevant date for SSI cases. *See also Grace v. Astrue*, No. 11 CIV. 9162, 2013 WL 4010271, at *24 (S.D.N.Y. July 31, 2013).

In other cases involving the issue of "borderline age" in DIB applications, most ALJs and courts use the claimant's DLI—without discussion because it was not an issue in that particular

6

case—as the relevant benchmark.  *See, e.g.*, *Stafford v. Astrue*, 581 F. Supp. 2d 456, 460 (W.D.N.Y. 2008).  These cases usually involve a DLI that is *before* the ALJ's decision; here, the situation is different because Plaintiff is insured through December 31, 2016.  Tr. 16.  There is some support for using the date of the ALJ's decision as the relevant date in these circumstances.  *Swan v. Barnhart*, No. 03-130-B-W-, 2004 WL 1529270, at *9 n.12 (D. Me. Apr. 30, 2004), *report and recommendation adopted*, No. CIV. 03-130-B-W, 2004 WL 1572700 (D. Me. May 19, 2004); *Gallagher v. Astrue*, No. 08-CV-163-PB, 2009 WL 929923, at *7 n.4 (D.N.H. Apr. 3, 2009).  However, the courts in *Swan* and *Gallagher* both state that DLI should be used in DIB cases and do not provide any reasoning for deviating from that rule in cases where the DLI happens to be after the date of the ALJ's decision.

Here, Plaintiff was born on May 22, 1964 and only applied for DIB.  Tr. 131.  The ALJ used Plaintiff's *disability onset date* (February 1, 2012) to calculate his age, and therefore found that Plaintiff was 47-years-old and was a "younger individual."  Tr. 24.  Based on the case law cited above, the ALJ erred by using Plaintiff's onset date as the relevant benchmark.

If Plaintiff's *DLI* was used, Plaintiff should clearly have been considered a "person closely approaching advanced age" rather than a "younger person."  Plaintiff was insured through December 31, 2016, which would make him 52 years old as of his DLI.  Therefore, the ALJ erred by considering Plaintiff a "younger person."

>    **B.**    **Even If The Date Of The ALJ's Decision Was Used To Calculate Plaintiff's Age, Plaintiff Was Close Enough To Age 50 To Be Considered "Borderline"**

Both Plaintiff and the Commissioner agree that the ALJ should have used *the date of the ALJ's decision* (December 23, 2013) to determine Plaintiff's age.  *See* ECF No. 7-1 at 6; ECF No. 8-1 at 12.  Therefore, both parties agree that Plaintiff's relevant age is 49 years and 7 months.  The parties disagree about whether 49 years and 7 months is close enough to 50 to be

considered a "borderline situation." Even if the date of the ALJ's decision was the appropriate benchmark to calculate Plaintiff's age, Plaintiff was close enough to age 50 to be considered "borderline."

The regulations do not provide any bright-line rule for determining which cases are "borderline." This lack of clarity is intentional; indeed, SSR 83-10 states that: "No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach." SSR 83-10, 1983 WL 31251, at *8. The SSA's Hearings, Appeal and Litigation Law Manual ("HALLEX") provides the following guidance:

> SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months.

HALLEX I-2-2-42., BORDERLINE AGE, 2016 WL 1167001, at *1 (Mar. 25, 2016).

Most district courts within the Second Circuit follow the HALLEX and hold that a period of up to six months is borderline. *Torres*, 2015 WL 5444888, at *10 (collecting cases); *Souliere v. Colvin*, No. 2:13-CV-236-JME, 2015 WL 93827, at *5 (D. Vt. Jan. 7, 2015) (same); *Metaxotos v. Barnhart*, No. 04 CIV. 3006 (RWS), 2005 WL 2899851, at *7–8 (S.D.N.Y. Nov. 3, 2005) (six months and fourteen days is borderline); *Roberson v. Heckler*, No. 83 CIV. 4753 (RLC), 1984 WL 621, at *3 n.5 (S.D.N.Y. July 19, 1984) (almost five months is borderline); *but see Smolinski v. Astrue*, No. 07-CV-386S, 2008 WL 4287819, at *4 (W.D.N.Y. Sept. 17, 2008) (four and a half months not borderline). The court in *Metaxotos* also noted that "because it is the Commissioner who bears the burden at step five, it is her burden to establish that a case is not a borderline case where she relies on the medical vocational rule to deny a claim." *Metaxotos*, 2005 WL 2899851, at *8.

Here, if the date of the ALJ's decision is used to determine Plaintiff's age, he would be five months shy of becoming a "person closely approaching advanced age." Given the guidance

8

from HALLEX, case law from throughout the Second Circuit, and the fact that it is the Commissioner's burden to establish that a case is not borderline, the ALJ erred by mechanically applying the age categories and failing to consider whether Plaintiff should be bumped up to the next age category.

It is important to note that the ALJ is not necessarily *required* to use the higher age category in a borderline situation. Rather, the ALJ's error in this case comes from the fact that he did not even *consider* whether using the higher age category would be appropriate.

### 2. Transferable Skills

The Commissioner argues that even if the ALJ erred by not considering whether to place Plaintiff in the higher age category, that error was harmless because the ALJ also found that Plaintiff had transferable skills. Based on the Grids, the Commissioner argues that Plaintiff would be "not disabled" if he has transferable skills even if he was considered a "person closely approaching advanced age."

Plaintiff argues that the ALJ's decision that Plaintiff has transferable skills is not supported by substantial evidence. The Court agrees. First, although the VE testified that Plaintiff had "data skills" and "supervisory skills," the VE also said that these skills were industry-specific. Second, "data skills" and "supervisory skills" are too vague to constitute "transferable skills" under the Act because they are not tied to any kind of work activity that Plaintiff performed in his past relevant work.

### A. Industry-Specific Skills

When asked at Plaintiff's hearing what skills Plaintiff had acquired in his past relevant work as a Supervisor – Operations at a power plant, the VE testified:

> The skills would be primarily data skills and supervisory skills but they'd be specific to that particular industry because, and setting, because it was done from '93 to 2012.

Tr. 69.  However, the VE then went on to testify that Plaintiff could perform the following jobs: Calculating Machine Operator, Sorter, and Laundry Pricing Clerk.  Tr. 70.  Based on the Court's review of the descriptions of these jobs in the Dictionary of Occupational Titles ("DOT"), none of these jobs appear to be in the same industry or setting as Plaintiff's past relevant work.  *See* DOT 216.482-022, 1991 WL 671935; DOT 209.687-022, 1991 WL 671812; DOT 216.482-030, 1991 WL 671937.  The Commissioner does not argue otherwise.

The VE's testimony is significant because, as Plaintiff points out, industry-specific skills are not transferable to other industries.  *See* 20 C.F.R. § 404.1568(d)(3) ("[W]hen skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.").

The Commissioner appears to argue that the Court should ignore the VE's comment about the skills being industry-specific and instead rely on (1) the fact that the VE ultimately testified that Plaintiff could perform other jobs with these skills, and (2) the fact that clerical and managerial skills usually are not industry-specific.  ECF No. 8-1, at 14-15.  The Commissioner is correct that skills obtained from clerical and managerial occupations are usually not industry-specific.  *See* SSR 82-41, 1982 WL 31389 (Jan. 1, 1982).  However, that does not change the fact that the VE testified at Plaintiff's hearing that *Plaintiff's skills were* industry-specific.  Therefore, the record simply does not provide substantial evidence that Plaintiff has transferable skills.

### B. Skills vs. Traits

Although the term "skill" is not defined in the regulations, SSR 82-41 explains the concepts of "skills" and "transferability of skills" in detail.  That ruling provides:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn).  It is practical and familiar knowledge of the

> principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like *making precise measurements, reading blueprints, and setting up and operating complex machinery.* A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, 1982 WL 31389, at *2 (emphasis added). SSR 82-41 goes on to include further helpful explanation of the difference between a "skill" and a "trait":

> The regulations definition of semiskilled work in regulations sections 404.1568(b) and 416.968(b) states that semiskilled jobs "may require alertness and close attention ... coordination and dexterity ... as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended, however, to illustrate types of skills, in and of themselves. *The terms describe worker traits (aptitudes or abilities) rather than acquired work skills.*
>
> Skills refer to experience and demonstrated proficiency with work activities *in particular tasks or jobs.* In evaluating the skill level of PRW or potential occupations, *work activities are the determining factors.*
>
> Worker traits to be relevant *must have been used in connection with a work activity.* Thus, in the regulations, the trait of alertness is connected with the work activities of close attention to watching machine processes, inspecting, testing, tending or guarding; and the traits of coordination and dexterity with the use of hands or feet for the rapid performance of repetitive work tasks. *It is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills.*

*Id.* at *3 (emphasis added).

In *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), the Second Circuit discussed 20 C.F.R. § 404.1568(d)(4) and SSR 82-41 in detail. There, the ALJ found that Draegert had acquired the following skills from his past relevant work as a security safety officer: (1) "ability to learn and apply rules and procedures, which are sometimes hard to understand;" (2) "ability to use reason and judgment in dealing with all kinds of people;" (3) "ability to think clearly and react quickly in an emergency;" (4) "ability to keep physically fit;" (5) "ability to make conclusions based on facts and on one's personal judgment;" and (6) "ability to change easily and frequently from one activity to another." *Id.* As a result, the ALJ concluded that Draegert could transfer his acquired skills to the occupations of gate guard and dispatcher. *Id.*

The Second Circuit held that "these abilities, *when not linked to any particular tasks*, are merely traits or aptitudes, not job skills, for 'worker traits, to be relevant, must have been used in connection with a work activity.'" *Id.* (quoting SSR 82-41) (emphasis added). Therefore, there was no substantial evidence for the ALJ's finding at step five.[3]

Here, the VE testified that Plaintiff had acquired "data skills" and "supervisory skills," Tr. 69, and the ALJ listed these in his decision as the two transferable skills that Plaintiff had acquired in his past relevant work. Tr. 24. Based on the guidance of SSR 82-41 and *Draegert*, these terms are too vague to constitute "transferable skills" for the purpose of determining disability. Neither the VE nor the ALJ made any effort to link these "skills" to any actual work activity that Plaintiff performed when he was the supervisor of operations at a power plant. Therefore, there is not substantial evidence in the record that "data skills" and "supervisory skills" are indeed "skills" that Plaintiff acquired through the performance of past work activities.

The Commissioner points out that after the VE said that Plaintiff had data skills, the VE also said that "the data skills are coordinating, analyzing, compiling, computing." Tr. 70. Again, however, there is no evidence about how Plaintiff acquired these skills *through the performance of past work activities*. And while "coordinating," "analyzing," "compiling," and "computing" may be slightly more specific than "data skills," those terms are still too vague to satisfy *Draegert*. Most importantly, the ALJ did not mention these terms at all in his decision; rather, the ALJ simply stated that Plaintiff had acquired "data skills." Tr. 24.

Although the Commissioner does not cite this case, *Moryl v. Barnhart*, No. 06-CV-00336, 2007 WL 9225067, at *6–7 (N.D.N.Y. Oct. 16, 2007) does provide some support for the Commissioner's position. In *Moryl*, the court held that there was substantial evidence to support "data management" as a transferable work skill. However, in that case there was actually

---

[3] The court in *Draegert* also discussed case law from other circuits, finding that terms such as "independence of judgment" and "responsibility for a work product" were too vague to constitute transferable skills. *Id.*

12

evidence in the record to show how the claimant acquired data management skills in his past relevant work *by performing certain work activities*.  Here, by contrast, there is no evidence in the record about how Plaintiff acquired data skills by performing work activities in his past relevant work.  Therefore, the record does not provide substantial evidence that Plaintiff acquired transferable skills through the performance of his past relevant work.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED.  This matter is REMANDED to the Commissioner for further administrative proceedings in accordance with this decision.  *See* 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 3, 2016
       Rochester, New York

                                                                                   _____
                                                                                    HON. FRANK P. GERACI, JR.
                                                                                     Chief Judge
                                                                                     United States District Court